1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 25, 2016

SEAN F. McAVOY, CLERK

3    UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

4

5    WENDY FLEMING, on behalf of
herself and all others similarly
situated,,

No.    2:15-CV-00174-SMJ

6
                            Plaintiff,

**ORDER ON PARTIES' MOTIONS
FOR SUMMARY JUDGMENT**

7
        v.

8
GREYSTAR MANAGEMENT
9    SERVICES, L.P., a Delaware
corporation, WILLIAM SIMMONS,
10   and EMMETT HIGGINS,

11                          Defendants.

12

13          On August 23, 2016, the Court held a hearing on Defendants' Motion for

Summary Judgment, ECF No. 22, and Plaintiff Wendy Fleming's Motion for
14
Summary Judgment, ECF No. 43. This Order memorializes and supplements the
15
Court's oral ruling.
16

17                  **I.    INTRODUCTION**

18          Plaintiff Wendy Fleming lived at an apartment complex managed by Greystar

19   Management Company in Spokane, Washington from April 2014 until January

20   2015. When Fleming moved out, Greystar charged Fleming a number of fees, which

Fleming disputed. This case arises from Greystar's attempt to collect those fees.

ORDER - 1

Fleming filed this suit on behalf of herself and similarly situated individuals, alleging that Greystar and two of its employees violated provisions of the Fair Debt Collection Practices Act (FDCPA). The court has not yet considered whether to certify a class in this case.

Both parties have moved for summary judgment on whether Greystar was a "debt collector" subject to the FDCPA. It is undisputed that Greystar is a first-party creditor with respect to tenants of the properties it manages, and would, if it were collecting a debt in its own name, be excluded from the FDCPA's definition of a "debt collector." But the term "debt collector" also includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). Because many of Greystar's communications with Fleming concerning her alleged debt were made by a representative of a Greystar division called "Advantage Solutions Receivables" who represented himself as an intermediary between Fleming and the property manager, the Court concludes that Greystar falls within the FDCPA's definition of a debt collector for the purpose of this case. Accordingly, the Court denies Defendants Motion for Summary Judgment and grants in-part Plaintiff's Motion for Summary Judgment.

Fleming also moves for summary judgment on whether Greystar's actions violated several provisions of the FDCPA. Because merits questions should not be decided prior to class certification, the Court strikes these portions of Fleming's motion.

## II.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k.

## III.    BACKGROUND

**A.    Facts**

Wendy Fleming is a medical assistant who lives and works in the Spokane area. ECF No. 33 at 2. On March 22, 2014, she signed a lease to rent an apartment at the Prairie Hills II apartment complex in Spokane, Washington. ECF No. 24-1 at 6. The lease required Fleming to follow specific move-out procedures when she decided to leave, including notice, cleaning, and a move-out inspection. *Id.* at 11. Paragraph 39, concerning cleaning, provided that "[i]f you don't clean adequately, you'll be liable for reasonable cleaning charges." *Id.* Paragraph 41 of the lease provided that Fleming would be liable for, among other things, "repairs or damages caused by negligence, carelessness, accident, or abuse." *Id.* The lease does not provide for an independent painting charge. *See id.* at 6–38.

At the time Fleming signed her lease, Prairie Hills II was managed and

1   operated by Riverstone Residential West, LLC, a subsidiary of the Riverstone

2   Residential Group. ECF No. 25 at 2. In June 2014, Greystar and Riverstone

3   merged and Greystar acquired Riverstone's property management servicing rights,

4   including its rights at the Prairie Hills apartments. *Id.* Fleming states that she was

5   unaware Greystar was the management company for Prairie Hills until after her

6   tenancy ended. ECF No. 33 at 2–3.

7        On December 13, 2014, Fleming gave notice to Prairie Hills that she

8   intended to move out of her apartment by January 31, 2015. ECF No. 24-2 at 38.

9   She moved out before the end of January. ECF No. 33 at 2.

10       On February 11, 2015, Greystar sent Fleming a letter on Greystar letterhead

11  informing her that she owed a balance of $430.00 and that payment was due in full

12  within 14 days. ECF No. 24-3 at 40. The letter was signed "Sincerely, Greystar,

13  ardept@greystar.com." *Id.* at 40. The letter included an attached statement showing

14  that the balance included a standard cleaning fee of $130.00, a standard carpet

15  cleaning fee of $50.00, a "Full Paint" for $160," and repair of a dent in the vinyl of

16  the bathroom sink for $90.00. *Id.* at 41.

17       On February 19, 2015, Will Simmons, from Advantage Solutions

18  Receivables sent an email to Fleming regarding the balance she owed. ECF No.

19  24-4 at 47. The first line of Simmons's email signature listed "Will Simmons |

20  Specialist, Advantage Solutions Receivables," and the second line listed "Greystar

| PO Box 2706." *Id.* Simmons' email address was listed as "wsimmons@greystar.com." *Id.*

According to Greystar's Director of Litigation Management and Dispute Resolution, "Advantage Solutions Receivables is a division within Greystar's Advantage Solutions Receivables Team that provides various property management services in addition to first-party collections." ECF No. 25 at 3. Greystar markets Advantage Solutions Receivables as "offer[ing] proven processes to maximize the recovery of post-tenancy delinquencies." ECF No. 25-3 at 42. Greystar explains that "[u]nlike third-party collection agencies, Greystar Receivables' status as a first-party collector allows [it] to request files within 72 hours of move-out and thoroughly audit files to ensure maximum compliance with the lease agreements and initiate collection services within days." *Id.* at 42.

Simmons's email informed Fleming that the vinyl charge was for a dent in the bathroom floor, not the sink, and that he had requested a revision to her invoice because she was overcharged for that repair. ECF No. 24-4 at 47. The email also stated that Simmons was waiting for paint and carpet invoices and would provide those as soon as he received them. *Id.* Simmons explained that the cleaning and painting were standard charges that Greystar includes for all units at move out. *Id.* Simmons noted that he had forwarded Fleming's disputes to Greystar. *Id.* at 50.

Fleming responded to Simmons email on the same day, continuing to object

ORDER - 5

to the charges. *Id*. at 47. She explained:

> I had the carpets clean per the move out instruction sheet and will not pay to have painting done either as there is no reason. As you can clearly see from the pic sent there are no marks on the walls nothing. . . . . I lived there for 10 mos alone no pets no kids no smoking nothing. . . . The mark on the floors was there when I moved in and this is craziness.

*Id.* Fleming sent Simmons a number of pictures of the apartment, showing that it was cleaned and that the walls were not marked. *Id.* at 48–59.

On February 20, 2015, Simmons forwarded Fleming's communications to Prairie Hills' Community Manger, Alysa Sturdivant. *Id.* at 62. He asked Sturdivant, "[i]s there anything that says clearly that painting and carpet cleaning are standard even if the unit is in good condition?" *Id.* Sturdivant responded:

> Pages 6 of 7 in the actual lease documentation paragraph # 39 states
>
> You mush [sic] thoroughly clean . . . etc, etc. You must follow move-out cleaning instructions, etc. If you do not clean adequately, bla blah.
>
> (In lieu of liability for cleaning charges, we may charge you a non-refundable cleaning fee described in paragraph 10 or in an addendum.)
>
> Now the tricky thing is, nothing described in paragraph 10 or the addendum but that is because SHE received a move in special. Instead of charging her a $400 non-refundable fee, . . . she moved in with a $99 admin fee. . . .
>
> I've reached out to our attorneys about this and they recommend that we credit her for any cleaning she can provide receipts for. I totally agree, if she can provide receipts for everything I think we should

ORDER - 6

1  credit her. Painting was done, regardless of if she thought the apt.
2  needed it or not. The painting charges WILL come back higher than
   the $160 we charge as standard.

3  *Id.* at 61. On February 23, 2015, Simmons forwarded Sturdivant's email to

4  Fleming. *Id.* at 60.

5  Fleming responded that "[t]his email proves they are trying to recoup a fee

6  that they didn't get from me on the move in special." *Id.* at 60. She also noted that

7  "there was no mention of standard charges at the end of the lease and I will say

8  again on multiple occasions I told them I was cleaning the apartment and carpets.

9  There was no mention on these occasion [sic] that they would be charging me a fee

10  anyway." *Id.*. She also expressed concern about the higher painting fee: "they want

11  to say it's actually a higher fee to paint again for what??? . . . Alyssa's

12  unprofessional responses in this email makes me wonder if this is a retaliatory

13  action by the staff." *Id.* at 61. Fleming emailed invoices for cleaning to Simmons

14  on March 2, 2015. *Id.* at 71.

15  Simmons and Fleming again exchanged emails on March 5, 2015, after

16  Simmons sent Fleming an invoice for apartment cleaning. *Id.* at 6–64. Fleming

17  argued that she did not owe money for cleaning because the lease did not include

18  standard cleaning charges and she cleaned the apartment. *Id.* at 63–64. She also

19  complained about receiving multiple bills with different totals and expressed

20  concern about what she viewed as deceptive practices. *Id.* Simmons stated that the

ORDER - 7

invoice was typical, the apartment cleaning was standard, and that he was "pretty sure the properties know how the laws work and would not knowingly try to get over on someone." *Id.* at 64.

On March 24, 2015, Fleming inquired whether Simmons had any new information about her apartment fees. *Id.* at 69. Simmons responded, "I apologize for the delay. I've been waiting for a response from the property. I can credit you the carpet charge of $50 and the cleaning charge of $130." *Id.* at 69. Fleming then sent another email stating: "I still disagree with any other charges (with exception of the vinyl repairs) as they were never listed in my lease. I will be seeking legal assistance with this." *Id.* at 68. On March 25, 2015, Simmons replied, "[y]ou can disagree if you want. Charges will stand. I will mark this as a refusal to pay and move on. I've done all I can do for you with this." *Id.* at 68.

On March 25, 2015, Greystar sent a letter directly to Fleming stating that she owed $244.87. ECF No. 33-4 at 16. The following day, Simmons emailed a revised statement to Fleming. ECF No. 24-4 at 70. He explained that "[t]he Prairie Hills II is charging you full price for paint now due to all the disputes you have. You can either contact me to get this resolved or refuse. . . . The property is not going to budge anymore on this. I've done all I can do for you." *Id.* The attached statement showed a $473.00 charge for painting and an $81.53 charge for vinyl damage, for a total of $554.53. ECF No. 33-6 at 20.

ORDER - 8

Fleming sent the following response to Simmons's email and the attached bill: "What??? They can't change their charges they sent the bill already??? I don't understand how this is legal or right? The bill is now more??? Please explain?" *Id.* On the same day, March 26, 2015, Fleming received another letter from Greystar, this time indicating she owed a balance of $562.37, due within 14 days. ECF No. 24-3 at 42. Fleming sent Simmons a final email on April 9, 2015, expressing confusion about what she allegedly owed and the role of Simmons, Advantage Solutions Receivables, and Greystar in the collection:

> Hi William;
>
> So I received a letter that states they now want me to pay $244 with an invoice for $575 for moveout fee on my old unit . . . . This is so confusing here . . . I don't know whats [sic] going on here??? Are you accessing [sic] the fees??? Or is it Alyssa. What is your role here and who is suppose [sic] to get this. Prairie Hills, Greystar or Advance Solutions. I don't understand. I know you said they tell you the charges . . . Who is they??? Please clarify your role and who your company is and what amount thats [sic] being charged to me thanks.
>
> Wendy Fleming

ECF No. 33-8 at 24.

## B.    Procedural History

Plaintiff filed the complaint in this action on July 10, 2015. ECF No. 1. Greystar answered on August 14, 2015. ECF No. 3. Defendants Higgins and Simmons answered on April 25, 2016. ECF Nos. 14, 15. All defendants moved for summary judgment on May 12, 2016. ECF No. 22. Plaintiff filed a cross-motion for

summary judgment on July 1, 2016. ECF No. 43. The court heard oral argument on this matter on August 23, 2016, in Spokane, Washington.

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

# V.    DISCUSSION

**A.    Greystar is a debt collector under the FDCPA for the purposes of this case.**

The FDCPA is intended to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The act defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due by another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6).

Greystar argues that it is not a debt collector under the FDCPA because (1) it obtained the right to collect Fleming's debt before it was in default; (2) its debt collection efforts were incidental to its overall duties as the property manager for Prairie Hills; and (3) it did not use a false name in its debt collection activities. ECF No. 22 at 1. Plaintiff does not dispute that Greystar is a first-party creditor that would, if it were collecting debts in its own name, fall within the exclusions provided in clause (F) of 15 U.S.C. § 1692a(6).[1] ECF No. 32 at 2, 7. Accordingly,

---

[1] This is correct. A person is not a debt collector when they attempt to collect "any debt owed or due or asserted to be owed or due to another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692(a)(6)(F)(iii). Generally, a property manager is exempt

the only disputed question on Defendants' motion for summary judgment is whether Greystar is a "debt collector" under the FDCPA because it used a false name in its debt collection activities.

For the purpose of 15 U.S.C. § 1692a(6)'s false name exception, "[a] creditor uses a name other than its own when it uses a name that implies that a third party is involved in collecting its debts, pretends to be someone else, or uses a pseudonym or alias." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) (internal quotation marks omitted). To determine whether a creditor falls within this exception, courts must consider whether the "least sophisticated consumer would have the false impression that a third party was collecting the debt." *Id.* at 235; *see Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061–62 (9th Cir. 2011). "The standard is designed to protect consumers of below average sophistication or intelligence, or those who are uniformed or naive, particularly when those individuals are targeted by debt collectors." *Gonzales*, 660 F.3d at 1062.

---

from the FDCPA because it obtains the right to collect rent before the debt was overdue. *See De Dios v. Int'l Reality & Invs.*, 641 F.3d 1071, 1076 (9th Cir. 2011) (citing 15 U.S.C. § 1692(a)(6)(F)(iii)). Greystar is also not a debt collector because its debt collection is incidental to a bona fide fiduciary obligation. *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1301 (11th Cir. 2012); *Reynolds v. Gables Residential Servs., Inc.*, 428 F. Supp. 2d 1260, 1264 (M.D. Fla. 2006).

ORDER - 12

1   Greystar argues that the false name exception does not apply because every

2   communication it made to Fleming was clearly and unmistakably from Greystar.

3   ECF Nos. 22 at 14, 37 at 4. But the relationship between Advantage Solutions

4   Receivables is not as obvious as Greystar suggests, and it is certainly not the case

5   that "it belies credulity for Plaintiff to assert that she could have been left with the

6   'false impression that a third party was collecting the debt.'" ECF No. 22 at 16.

7   Simmons' email address included "Greystar" on the second line and the

8   actual collection-notice letters that Fleming received were clearly from Greystar.

9   But it is obvious that Simmons very intentionally presented himself as an

10   intermediary between Fleming and her former property manager. ECF No. 24-4 at

11   48–61. And Fleming, who is no less sophisticated than the least-sophisticated

12   consumer, appears to have been legitimately confused about Simmons' and

13   Advantage Solutions Receivable's role. In her April 19, 2015 email she directly

14   asked: "What is your role here and who is suppose [sic] to get this. . . . Please

15   clarify your role and who your company is and charged to me." ECF No. 33-8 at

16   24. Fleming confirmed in her declaration that she was confused by the multiple

17   communications from Advantage Solutions Receivables and Greystar, and that

18   "[a]t the time, [she] did not understand that Advantage Solutions Receivables was

19   a department or division within Greystar. [She] thought it was a separate entity

20   attempting to collect the disputed debt." ECF No. 33 at 4.

ORDER - 13

1    Greystar argues that there is no indication Fleming was confused prior to her

2    April 9 email. ECF No. 37 at 8. But neither is there any indication that she

3    understood Simmons's and Advantage Solutions Receivables' role. There was

4    ample reason for her to be confused. Over and over, Simmons represented himself

5    as an intermediary. He forwarded Fleming's disputes to the property manager, and

6    forwarded responses to Fleming, ECF No. 24-4 at 50, 60, 64, and he repeatedly

7    suggested that "the property" was making determinations about the amount she

8    owed. ECF Nos. 24-4 at 64, 33-6 at 20.

9    Greystar points to several cases where, it argues, courts have found the false

10   name exception does not apply in similar situations. ECF No. 22 at 19. But in each

11   of these cases, the names of the debt collection or debt services division included

12   the name of the creditor or was a variant of that name. *Porter v. Wachovia Dealer*

13   *Servs., Inc.*, 2007 WL 2693370, at *4 (D. Or. Sept. 12, 2007) (WFS Financial and

14   Wachovia Dealer Services); *Williams v. Citibank N.A.*, 565 F. Supp. 2d 523, 531

15   (S.D.N.Y. 2008) ("Citicorp Credit Services and CitiCard); *Drew v. Rivera*, 2012

16   WL 4088943, at *5 (N.D. Fla. Aug. 6, 2012) (Citibusiness and Citibank). By

17   contrast, in this case there is no similarity between "Advantage Solutions

18   Receivables" and "Greystar."

19   Greystar also attempts to distinguish this case from *Maguire*, ECF No. 22 at

20   17–18, which held that the false name exception applied where Citicorp sent a

letter from its in-house debt collection unit, "Debtor Assistance." *Maguire*, 147 F.3d at 234. The letter was written on Debtor Assistance letterhead and did not expressly mention Citicorp. *Id.*

While it is true that this case differs from *Maguire* in that Greystar was mentioned in Simmons's communications with Fleming, *Maguire* does not hold that a creditor's use of a false name violates the FDCPA only if the creditor fails to include any reference to its actual name. *See id.* at 235–36. Instead, the *Maguire* court stated that "[a]lthough a creditor need not use its full business name or its name of incorporation to avoid FDCPA coverage, it should use the name under which it usually transacts business, or a commonly-used acronym, or any name that it has used from the inception of the credit relation." *Id.* (internal quotation marks omitted). Advantage Solutions Receivables does not fall within any of those categories: the name has no similarity to or connection with Greystar, and Greystar apparently never used the name in any previous communication with Fleming.

The question here is not whether Greystar's name could be found somewhere in Simmons' communications with Flemming, it is whether the least sophisticated consumer could have had the false impression that a third party was attempting to collect the debt Fleming owed to Greystar. Based on the form and content of Simmons' communications with Fleming, the Court concludes that such a consumer could have had that impression.

ORDER - 15

**B.    The Court will consider Plaintiff's motion with respect only to the question whether Greystar is subject to the FDCPA.**

Under Rule 23(c)(2) a plaintiff may not intervene in a class action "after an adjudication favoring the class ha[s] taken place. . . . [b]ecause the plaintiff would not otherwise be bound by an adjudication in favor of the defendant." *Schwarzchild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) (internal quotation marks omitted). This is known as the one-way-intervention rule. *Id.* To avoid the prejudicial effect of this rule, courts generally refrain from granting summary judgment on the merits of a class action claim before the class has been properly certified, *see id.*, and some circuits have held that "Rule 23 requires class certification prior to determination on the merits." *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 353 (7th Cir. 1975).

The primary issue here is not a merits question. Both parties have asked that this court decide the same threshold question—whether Greystar was acting as a debt collector and therefore subject to the FDCPA. This is a question of law, *see Gonzales*, 660 F.3d at 1061 (noting that objective, least-sophisticated-debtor analysis under FDCPA is a question of law), and it is one that will be much more efficiently decided prior to class certification. Accordingly, for the same reasons the court denied Greystar's motion, the court Grant's Plaintiff's motion for summary judgment on the issue whether Greystar is subject to the FDCPA.

The Court strikes the remainder of Plaintiff's motion, concerning whether Greystar violated 15 U.S.C. §§ 1692e (10), (11) or 1692g, because a judgment in

favor of Fleming on those claims may preclude intervention by other plaintiffs. *See Schwarzchild*, 69 F.3d at 295.

## VI.    CONCLUSION

For the reasons discussed, the Court concludes that (1) Greystar falls within the FDCPA's "debt collector" definition for the purpose of this case and (2) the remaining issues raised in Plaintiff's motion for summary judgment will not be decided prior to class certification.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendants' Motion for Summary Judgment, **ECF No. 22**, is **DENIED.**

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 43**, is **GRANTED IN-PART** with respect only to whether Greystar is subject to the FDCPA.

3.    The remainder of Plaintiff's Motion for Summary Judgment, **ECF No. 43**, is **STRICKEN.**

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 25th day of August 2016.

_____
SALVADOR MENDOZA, JR.
United States District Judge

Q:\SMJ\Civil\2015\Fleming v  Greystar Management Service-0174\Order SJmotions 22and43.docx